O

cc: USBK

JS-6

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE AIRLUX AIRCRAFT, INC., | Case No. 2:20-cv-04740-JWH |
| Debtor. | |
| AIRLUX AIRCRAFT, INC., | **MEMORANDUM OPINION RE APPEAL FROM ORDER OF THE BANKRUPTCY COURT GRANTING RETROACTIVE RELIEF FROM THE AUTOMATIC STAY** |
| Appellant, | |
| v. | |
| SECURED INCOME FUND-II, LLC, | |
| Appellee. | |

Chapter 7 Debtor Airlux Aircraft, Inc. appeals an order granting the motion of Creditor Secured Income Fund-II, LLC ("SIF-II") for retroactive relief from the automatic stay under 11 U.S.C. §§ 362(d)(2) & (d)(4).[1]  For the reasons set forth below, this Court **AFFIRMS**.

## I.  BACKGROUND

### A.      The Bankruptcy Case

On September 30, 2018, Airlux filed a petition under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Central District of California,[2] thereby commencing bankruptcy case No. 1:18-bk-12433-MB.[3] Dr. Mark Liker is the Chief Executive Officer and sole shareholder of Airlux.[4] On June 14, 2019, the bankruptcy court granted the motion of the Committee of Unsecured Creditors for the appointment of a Chapter 11 trustee,[5] and on June 24, 2019, the bankruptcy court appointed Elissa Miller (the "Trustee") as the Chapter 11 Trustee in Airlux's bankruptcy case.[6]  On August 5, 2019, the bankruptcy court granted the Trustee's (unopposed) motion to convert the case

---

[1]      *See* Am. Notice of Appeal and Statement of Election [ECF No. 8]; Appellant's Opening Br. (the "Appellant's Brief") [ECF No. 15].  References to documents filed in Airlux's bankruptcy case, *In re Airlux Aircraft, Inc.*, No. 1:18-bk-12433-MB, are cited herein as "BK ECF No.," followed by the document number on the bankruptcy court's docket.

[2]      Unless otherwise indicated, all chapter and section citations refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

[3]      *See* Chapter 11 Voluntary Pet. [BK ECF No. 1].

[4]      *See* Bankruptcy Schedules [BK ECF No. 19] at 3 (List of Equity Security Holders).  It is noteworthy that Dr. Liker's address is listed as "16814 Oak View Dr., Encino, CA 91436—the property at issue in the instant appeal.  *Id.*

[5]      Order Granting Mot. for Appointment of a Chapter 11 Trustee, or in the Alternative, for Conversion of the Case to Chapter 7 [BK ECF No. 151].

[6]      Order Approving Appointment of a Chapter 11 Trustee [BK ECF No. 161].

to Chapter 7,[7] and Ms. Miller was appointed to serve as the Chapter 7 Trustee in Airlux's bankruptcy case.[8]

## B.    The Property

On its schedule of assets, Airlux claimed, among other assets, a fee simple interest in the residential real property located at 16814 Oak View Drive, Encino, CA 91436 (the "Property"), to which Airlux assigned a total value of $2,950,000.00.[9]  According to Airlux's schedule of secured claims, the Property was encumbered by a first mortgage held by Bank of America N.A. in the amount of $1,427,492.00, and a second mortgage held by SIF-II in the amount of $967,646.00.[10]

The Property was originally owned by the Liker Family Trust.  On July 30, 2015, Dr. Liker, as the trustee of the Liker Family Trust, entered into a loan agreement with SIF-II in the principal amount of $979,583.00, secured by a second mortgage on the Property (the "SIF-II Loan").[11]  As noted above, the Property was also encumbered by the first mortgage of Bank of America.[12] Dr. Liker and the Liker Family Trust defaulted on the SIF-II Loan in March 2018, and they stopped paying Bank of America's senior loan around the same time.[13]  SIF-II responded by commencing a non-judicial foreclosure of the Property on May 29, 2018, and it recorded a Notice of Trustee's Sale on

---

[7]    Order Granting Chapter 11 Trustee's Motion to Convert Case to Chapter 7 [BK ECF No. 173].

[8]    *See* Notice of Appointment of Trustee and Fixing of Bond; Acceptance of Appointment as Interim Trustee [BK ECF No. 175].

[9]    Bankruptcy Schedules at 7 (Schedule A/B:  Assets—Real and Personal Property).

[10]    *Id.* at 9 (Schedule D:  Creditors Who Have Claims Secured by Property).

[11]    *See* Decl. of Shafiq Taymuree Re: Secured Income Fund-II, LLC Relief from Stay and Stay Annullment [*sic*] Mot. (the "Suppl. Taymuree Decl.") [BK ECF No. 219] ¶ 2; Bankruptcy Schedules 9; *see also* Real Property Decl. of Shafiq Taymuree (the "Real Property Decl.") [BK ECF No. 219] ¶ 8.

[12]    *See* Bankruptcy Schedules 9; Suppl. Taymuree Decl. ¶ 3.

[13]    *See* Suppl. Taymuree Decl. ¶ 3.

1    September 5, 2018, with the Trustee's Sale scheduled for October 2, 2018.[14]  On

2    September 25, 2018, the Liker Family Trust recorded a document entitled

3    "Contract for Deed," which purported to transfer title to the Property to Airlux

4    (without SIF-II's knowledge or consent).[15]  Although the Contract for Deed was

5    not recorded until October 2018, the document was notarized and dated June 15,

6    2017.[16]  Airlux filed its Chapter 11 petition five days after the Contract for Deed

7    was recorded.  Consequently, SIF-II's Trustee Sale was automatically stayed

8    under § 362(a).

9          On February 6, 2019, SIF-II filed its first motion for relief from stay with

10   respect to the Property,[17] which Airlux opposed.[18]  The bankruptcy court

11   continued the hearing on SIF-II's first motion for relief from stay on multiple

12   occasions.  Eventually, after the bankruptcy court converted Airlux's case to

13   Chapter 7, the Trustee filed a notice of its intent to abandon the Property

14   pursuant to § 554(a),[19] which abandonment became effective on September 11,

15   2019.[20]  Believing that the Trustee's abandonment of the Property entitled it to

16   proceed with a Trustee's Sale of the Property, SIF-II conducted a non-judicial

17

18

19   ─────────────

14      *Id.* at ¶ 4.

20   15      *See id.* at ¶ 5; Decl. of Bruce Cornelius Re:  Secured Income Fund-II, LLC
     Relief from Stay and Stay Annullment [*sic*] Mot. (the "Cornelius Decl.") [BK
21   ECF No. 219] ¶ 3; Contract for Deed [BK ECF No. 219-1, Ex. E] (the Cornelius
     Decl. incorrectly identifies the Contract for Deed as Exhibit "F").

22   16      *See generally* Contract for Deed.

23   17      SIF-II Mot. for Relief from the Automatic Stay (the "First RFS Motion")
     [BK ECF No. 81].

24   18      Airlux Resp. to the First RFS Motion [BK ECF No. 84].

25   19      Trustee's Notice of Proposed Abandonment [BK ECF No. 181].
     Section 554(a) authorizes a trustee to "abandon any property of the estate that is
26   burdensome to the estate or that is of inconsequential value and benefit to the
     estate."  Property abandoned under § 554(a) reverts to the debtor.  *See, e.g.*, *In
27   re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990).

     20      *See* Trustee's Notice of Abandoned Property [BK ECF No. 187]; *see also*
28   Cornelius Decl. ¶ 6.

1    foreclosure—and purchased the Property—on September 12, 2019.[21]  On

2    September 26, 2019, SIF-II filed a notice of voluntary dismissal of its first

3    motion for relief from stay.[22]

4         In October 2019, SIF-II filed an Unlawful Detainer action against

5    Dr. Liker and another occupant of the Property.[23]  On November 26, 2019,

6    Dr. Liker filed a complaint for damages against SIF-II in state court for SIF-II's

7    alleged violation of the automatic stay,[24] which was served upon SIF-II on

8    January 30, 2020.[25]  On March 3, 2020, SIF-II filed its second motion for relief

9    from stay and annulment of the stay under §§ 362(d)(2) and (d)(4),[26] which

10   Airlux opposed.[27]  The bankruptcy court held a hearing on the RFS Motion on

11   April 1, 2020, after which the bankruptcy court directed the parties to file

12   supplemental briefs on the issue of the annulment of the stay.[28]  On May 13,

13   2020, after the parties filed their supplemental briefs, the bankruptcy court

14   made oral findings of fact and conclusions of law on the record and granted

15   SIF-II relief from stay under § 362(d)(2) and (d)(4) and annulled the stay

16   retroactive to the date of the Trustee's Sale.[29]

17

18

---

19    [21]      *See* Cornelius Decl. ¶¶ 6–9.

20    [22]      Voluntary Dismissal of Mot. [BK ECF No. 191].

21    [23]      *Id.* at ¶ 12.

     [24]      *See* Airlux Resp. to Mot. of SIF-II for Relief from the Automatic Stay and

22   Retroactive Annulment of Stay (the "RFS Opposition") [BK ECF No. 221] 7:7–17; Decl. of Moses S. Bardavid in Supp. of the RFS Opposition (the "Bardavid

23   Decl.") [BK ECF No. 221] ¶ 4 & Ex. C.

     [25]      *See* Bardavid Decl. ¶ 6 & Ex. E.

24    [26]      SIF-II's Mot. for Relief from the Automatic Stay (the "RFS Motion")

25   [BK ECF No. 219].

     [27]      *See generally* RFS Opposition.

26    [28]      Appellee's Reply Brief (the "Appellee's Brief") [ECF No. 24] 4:20–23.

27    [29]      *See* Trans. of Proceedings, May 13, 2020 (the "Ruling") [BK ECF

     No. 257] 13:24–41:22; *see also* Order Granting in Part, Denying in Part the RFS

28   Motion (the "Order") [BK ECF No. 239].

1    Airlux timely appealed the bankruptcy court's Order.[30]  The appeal is

2  fully briefed, and the Court heard oral argument on the appeal on January 29,

3  2021.

## II.  JURISDICTION

5    The bankruptcy court had jurisdiction over Airlux's bankruptcy case, and

6  the motions that are the subject of this appeal, pursuant to 28 U.S.C. §§ 1334 &

7  157(b)(2)(G).  This Court has jurisdiction over this appeal under 28 U.S.C.

8  § 158(b).

## III.  ISSUE

10    Did the bankruptcy court abuse its discretion when it granted SIF-II

11  retroactive relief from the automatic stay?

## IV.  STANDARDS OF REVIEW

13    This Court reviews the bankruptcy court's findings of fact under the

14  clearly erroneous standard.  *In re Caldwell*, 545 B.R. 605, 609 (B.A.P. 9th Cir.

15  2016).  A factual finding is clearly erroneous if, upon review of the record on

16  appeal, the finding is "illogical or implausible," or lacks "support in inferences

17  that may be drawn from facts in the record."  *United States v. Hinkson*, 585 F.3d

18  1247, 1261 (9th Cir. 2009) (*en banc*).  Under this standard, when there are two

19  plausible views of the evidence, the bankruptcy court's choice between them

20  cannot be clearly erroneous.  *See Anderson v. City of Bessemer City, N.C.*, 470

21  U.S. 564, 574 (1985).

22    This Court reviews the bankruptcy court's decision to grant relief from

23  the automatic stay under § 362(d) for an abuse of discretion.  *Groshong v. Sapp*

24  *(In re Mila, Inc.)*, 423 B.R. 537, 542 (B.A.P. 9th Cir. 2010); *In re Leisure Corp.*,

25  234 B.R. 916, 920 (B.A.P. 9th Cir. 1999).  Likewise, this Court reviews the

26

27

---

28    [30]    *See* Notice of Appeal and Statement of Election [ECF No. 1].

1  bankruptcy court's decision to grant annulment of the stay for an abuse of

2  discretion.  *In re Fjeldsted*, 293 B.R. 12, 18 (B.A.P. 9th Cir. 2003).

3       The Ninth Circuit has adopted a two-part test to determine whether a

4  trial court has abused its discretion.  The first step "is to determine de novo

5  whether the trial court identified the correct legal rule to apply to the relief

6  requested."  *Hinkson*, 585 F.3d at 1261–62.  If it did not, then the court on

7  appeal must conclude that the trial court abused its discretion.  *Id.* at 1262.  If,

8  however, the trial court identified the correct legal standard, the appellate court

9  proceeds to the second step, which is "to determine whether the trial court's

10  application of the correct legal standard was (1) 'illogical,' (2) 'implausible,' or

11  (3) without 'support in inferences that may be drawn from the facts in the

12  record.'"  *Id.* (quoting *Anderson*, 470 U.S. at 577).

13                              **V.  DISCUSSION**

14  **A.      Whether the Bankruptcy Court Abused Its Discretion in Granting**

15  **          SIF-II Relief from the Automatic Stay**

16       The filing of a petition for relief under the Bankruptcy Code triggers an

17  automatic stay of, among other things, all acts to collect against the debtor or

18  property of the bankruptcy estate (subject to a few defined exceptions).  *See* 11

19  U.S.C. § 362(a).  Once the stay is in effect, a creditor must seek relief from stay

20  before taking any action against property of the estate.  *Id.* § 362(d).  The

21  Bankruptcy Code provides that upon a request by a party in interest, the

22  bankruptcy court "shall grant" relief from stay—which includes termination or

23  annulment of the stay—under four enumerated circumstances.  *See id.*  The

24  party moving for relief from stay under § 362(d) has the burden of proof on the

25  issue of the debtor's equity in property, while the party opposing such relief has

26  the burden of proof on all other issues.  *Id.* § 362(g).  Here, the bankruptcy court

27

28

granted SIF-II relief from stay under §§ 362(d)(2) *and* (d)(4).[31]  Airlux appeals both rulings.

### 1.    The Bankruptcy Court Did Not Abuse Its Discretion in Granting Relief under § 362(d)(2)

Under § 362(d)(2), the bankruptcy court must grant relief from stay with respect to property of the estate if the court finds that "the debtor does not have an equity" in the property and that the property "is not necessary to an effective reorganization."  The term "equity" in § 362(d)(2) "refers to the difference between the value of the property and all encumbrances upon it."  *Stewart v. Gurley*, 745 F.3d 1194, 1195 (9th Cir. 1984).  Thus, to show the absence of equity in the property, the party moving for relief from stay under § 362(d)(2) has the initial burden to establish both the value of the property and the total amount of encumbrances (although the total amount of encumbrances is, in many cases, a non-issue because it can be established through documentary evidence).  *See id.* at 1196 (equity is "the amount or value of a property above the ***total*** liens or charges" (citation omitted; emphasis in original)).  The debtor, in turn, may submit controverting evidence to show that the value of the property exceeds the total amount of encumbrances.  Whether relief is granted under § 362(d)(2) often turns upon the valuation of the property.  There is no bright-line test for determining the value of collateral; rather, the Bankruptcy Code leaves the task of valuation to the sound discretion of the bankruptcy court.  *See In re Diplomat Electronics Corp.*, 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1998).

Here, the bankruptcy court applied the correct legal standard under § 362(d)(2) and found that Airlux did not have any equity in the Property because the total amount of encumbrances exceeded the value of the Property.[32]

---

[31]    Order 3, ¶¶ 3(b) & (d).

[32]    *See* Ruling 21:18–22:15.

1    *See* 11 U.S.C. § 362(d)(2)(A).  And, because Airlux's bankruptcy case was

2    converted to Chapter 7, the Property's role in a reorganization was not at issue.[33]

3    *See id.* § 362(d)(2)(B).  In this appeal, Airlux contends that there was no

4    evidence regarding the total amount of liens securing the debt against the

5    Property and that the bankruptcy court abused its discretion by relying upon the

6    valuation of the Property submitted by SIF-II.  The bankruptcy court's findings,

7    however, are firmly supported by the record.

8         With respect to the total amount of liens securing the debt against the

9    Property, Airlux argues in a conclusory fashion that "there was no evidence that

10   the liens against the property exceeded the property's current fair market

11   value" and that there was no evidence regarding the specific amount owed to

12   the senior lien holder.[34]  This argument finds no support in the record.  To the

13   contrary, SIF-II established through uncontroverted documentary evidence and

14   declaration testimony that the total debt secured by the Property was

15   $3,041,915.20.[35]  Airlux, on the other hand, did not present any evidence to

16   contest the total amount of the liens secured by the Property, as Airlux's counsel

17   admitted on the record at the hearing on SIF-II's RFS Motion.[36]  Accordingly,

18   for the purpose of calculating the equity in the Property (or lack thereof) the

19   bankruptcy court properly relied on SIF-II's evidence regarding the total

20   amount of liens secured by the Property.

21        Next, multiple grounds exist for affirming the bankruptcy court's finding

22   regarding the Property's value.  SIF-II submitted uncontroverted evidence in

23   the form of declaration testimony that the value of the Property was

24

25   ───────────────

[33]     *See id.* at 22:11–14.

26   [34]     *See* Appellant's Brief 8:22–9:2.

27   [35]     *See* Ruling 21:22–22:1; *see also* Real Property Decl. ¶¶ 8 & 11(e)-(h);
Cornelius Decl. ¶ 6 & Ex. G; Suppl. Taymuree Decl. ¶¶ 7 & 8.

28   [36]     *See* Ruling 8:22–9:10, 12:4–13:20, & 22:2–15.

$2,850,000.00.[37]  Again, despite having an opportunity to do so, Airlux failed to submit any evidence to contest SIF-II's evidence of value.[38]  In the absence of any controverting evidence from Airlux, the bankruptcy court correctly relied upon SIF-II's valuation.  *See* 11 U.S.C. § 362(g).  In the alternative, the bankruptcy court properly could have relied upon Airlux's valuation of the Property in its Bankruptcy Schedules of $2,950,000.00.[39]  Regardless, the evidence supports only one conclusion—the Property was (figuratively) under water.

In sum, the bankruptcy court's finding that Airlux had no equity in the Property is firmly supported by evidence that the total encumbrances against the Property—$3,041,915.20—exceeded the value of the property, whether based upon SIF-II's valuation of $2,850,000.00 or Airlux's own valuation (in its Bankruptcy Schedules) of $2,950,000.00.  Therefore, the bankruptcy court did not abuse its discretion in granting relief from stay under § 362(d)(2).

## 2.    **The Bankruptcy Court Did Not Abuse Its Discretion in Granting Relief under § 362(d)(4)**

Section 362(d)(4) applies specifically to "an act against real property." Under this provision, the bankruptcy court must grant relief from stay to a creditor with a secured interest in the real property if the court finds that the debtor filed its petition as "part of a scheme to delay, hinder, or defraud creditors that involved," as relevant here, the "transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval."  *Id.* § 362(d)(4)(A).  To obtain relief under § 362(d)(4), the bankruptcy court must find that each of the following three

---

[37]    *See* Real Property Decl. ¶ 11(d); Cornelius Decl. ¶ 6 & Ex. G; Suppl. Taymuree Decl. ¶¶ 7 & 8.
[38]    *See* Ruling 6:1–6, 8:22–9:10, 12:4–8, 13:15–20, & 22:2–15.
[39]    *See* Bankruptcy Schedules 7 (Schedule A/B:  Assets—Real and Personal Property).

1    elements is established:  (1) the debtor's petition was part of a scheme; (2) the

2    object of the scheme was to delay, hinder, or defraud creditors; and (3) the

3    scheme involved, in relevant part, the transfer of some interest in the real

4    property without the consent of the secured creditor or court approval.  *See In re*

5    *First Yorkshire Holdings, Inc.*, 470 B.R. 864, 870 (B.A.P. 9th Cir. 2012).

6          Here, notwithstanding Airlux's erroneous (and conclusory) statement to

7    the contrary,[40] the bankruptcy court plainly identified and applied the correct

8    legal standard under § 362(d)(4).[41]  The thrust of Airlux's argument with

9    respect to the relief granted under § 362(d)(4) is that the bankruptcy court's

10   finding that Airlux's petition was filed in bad faith (*i.e.*, the court's findings with

11   respect to each of the aforementioned elements for relief under § 362(d)(4)) was

12   clearly erroneous and that the bankruptcy court, therefore, abused its

13   discretion.[42]

14         In this regard, the bankruptcy court's finding that all three elements for

15   relief under § 362(d)(4) were met is supported by evidence from which the court

16   could reasonably infer that the petition was part of a scheme to defraud, hinder,

17   or delay creditors by transferring an interest in the Property without the consent

18   of the secured creditor.  Specifically, the record supports the bankruptcy court's

19   findings that Dr. Liker and the Liker Family Trust transferred an interest in the

20   Property to Airlux without notice to SIF-II, that the transfer was recorded a

21   mere five days before Airlux filed its bankruptcy petition, and that the Property

22   did not serve any business purpose with respect to Airlux, but, rather, it was the

23   residence of Airlux's principal, Dr. Liker.[43]  Furthermore, before recording the

24

---

25   [40]     Appellant's Brief 10:25.  Airlux baldly asserts that "the bankruptcy court
     failed to apply the correct legal standard," without any further argument or
26   elucidation.

27   [41]     Ruling 14:21–15:4 & 24:6–13.

     [42]     *See* Appellant's Brief 10:27–12:3 & 19:26–22:17.
28   [43]     *See* Ruling 25:14–29:23 (citing Suppl. Taymuree Decl. ¶¶ 5, 6, & 11).

1   transfer of the Property to Airlux on the eve of its bankruptcy, Dr. Liker and the

2   Liker Family Trust had defaulted on the first and second deeds of trust and had

3   failed to pay property taxes.[44]  These facts, taken together, support the

4   bankruptcy court's decision to grant relief from stay under § 362(d)(4).

5          Airlux, for its part, did not submit any evidence to controvert the evidence

6   of bad faith submitted by SIF-II.[45]  Instead, Airlux's only argument below—as in

7   the present appeal[46]—was premised upon the fact that the "Contract for

8   Deed," through which Dr. Liker purported to transfer an interest in the

9   Property to Airlux, was notarized and dated June 15, 2017.[47]  Thus, according to

10  Airlux, the fact that the Contract for Deed was recorded a mere five days before

11  Airlux's bankruptcy was not sufficient evidence that the petition was part of a

12  bad faith scheme.  But the evidence could fairly be interpreted either way—

13  neither the date of execution nor the date of recording is dispositive of the issue.

14  The bankruptcy court considered Airlux's argument on this point and rejected it

15  based upon the evidence in the record, including the circumstances of the

16  transfer, the terms of the Contract for Deed, and the date of recording, among

17  other things.[48]  There is nothing in the record to suggest that the bankruptcy

18  court's finding in this regard was clearly erroneous.  *See Anderson*, 470 U.S. at

19  574 (when there are two plausible views of the evidence, the bankruptcy court's

20  choice between them cannot be clearly erroneous).

21         Moreover, Airlux's reliance on California law in support of its

22  argument—that the date of execution of the Contract for Deed is dispositive—is

23  misplaced.  The California statute at issue provides, in pertinent part, that "an

24

---

25  [44]     *See id.*; *see also* Suppl. Taymuree Decl. ¶¶ 3 & 4.

26  [45]     *See* Ruling 26:8–21; *see generally* RFS Opposition.

    [46]     Appellant's Brief 10:27–11:23 & 19:26–22:7.

27  [47]     *See* Ruling 26:11–21; RFS Opposition 6:17–26.

28  [48]     Ruling 26:11–21.

1   unrecorded instrument is valid as between the parties thereto and those who

2   have notice thereof." Cal. Civ. Code § 1217.  Therefore, according to Airlux,

3   under California law a deed is valid even if it is not recorded.[49]  However,

4   assuming *arguendo* that the Contract for Deed is an "instrument" within the

5   meaning of § 1217,[50] Airlux fails to recognize the importance of the phrase "and

6   those who have notice thereof," which is a condition on the validity of the

7   instrument.  Here, it is undisputed that SIF-II did not have notice of the

8   purported transfer from Dr. Liker to Airlux until the Contract for Deed was

9   recorded.[51]  Therefore, the plain language of § 1217 dictates that the Contract for

10  Deed was not valid as between Airlux and SIF-II.  The date that the Contract for

11  Deed was executed is, thus, irrelevant in the context of this appeal.  If anything,

12  the fact that Dr. Liker and Airlux failed to give SIF-II notice of the Contract for

13  Deed when they purportedly executed that document supports the bankruptcy

14  court's findings.

15         Based upon the foregoing, the bankruptcy court's findings are firmly

16  supported by the evidence in the record, and, therefore, the bankruptcy court

17  did not abuse its discretion in granting relief under § 362(d)(4).

18  **B.**    **Whether the Bankruptcy Court Abused Its Discretion in Granting**

19         **Retroactive Annulment of the Stay**

20         Violations of the automatic stay are void, not simply voidable.  *In re*

21  *Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992).  With that in mind, one form of

22  relief from stay under § 362(d) is annulment of the stay.  *See* 11 U.S.C. § 362(d).

23

24  ---

[49]      *See* Appellant's Brief 20:11–27.

25  [50]      SIF-II argues that the Contract for Deed is not a transfer of ownership,
but, rather, it is a mere promise to transfer title at some future time, upon

26  fulfilment of the contract's conditions.  *See* Appellee's Brief 11:14–28.
However, the bankruptcy court did not base its findings on whether the

27  Contract for Deed was, in fact, a transfer of ownership, so this Court need not
decide that issue on appeal.

28  [51]      *See* Suppl. Taymuree Decl. ¶ 5.

1    Annulment gives the bankruptcy court's relief from stay order retroactive effect.

2    In other words, § 362(d) "gives the court the power to ratify retroactively any

3    violation of the automatic stay which would otherwise be void" by annulling the

4    stay. *Schwartz*, 954 F.2d at 573; *see also Sikes v. Global Marine, Inc.*, 881 F.2d

5    176, 180 (5th Cir. 1989) (Johnson, J., dissenting) (although violations of the

6    automatic stay are void, "a bankruptcy court may validate an otherwise void

7    filing in violation of the automatic stay"). Whether cause exists to annul the

8    stay is determined on a case-by-case basis. *Nat'l Envtl. Waste Corp. v. City of*

9    *Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1055 (9th Cir. 1997),

10   *cert. denied*, 524 U.S. 952 (1998). The bankruptcy court must balance the

11   equities, considering, among other factors, whether the creditor knew of the

12   debtor's bankruptcy when it violated the stay and whether the debtor's conduct

13   was unreasonable or inequitable to the creditor. *Id.* at 1055.

14          In determining whether annulment is warranted, courts in the Ninth

15   Circuit consider 12 factors: (1) the number of bankruptcy filings by the debtor;

16   (2) whether, in a repeat filing case, the circumstances indicate an intention to

17   delay or hinder creditors; (3) the extent of prejudice to creditors or third parties

18   if the stay relief is not made retroactive, including whether a bona fide purchaser

19   might be harmed; (4) the debtor's overall good faith (under the totality of

20   circumstances test); (5) whether the creditor knew of stay but nonetheless

21   violated the stay, thus compounding the problem; (6) whether the debtor has

22   complied, and is otherwise complying, with the Bankruptcy Code and Rules;

23   (7) the relative ease of restoring parties to the status quo ante; (8) the costs of

24   annulment to the debtor and creditors; (9) how quickly creditors moved for

25   annulment, or how quickly debtor moved to set aside the sale or violative

26   conduct; (10) whether, after learning of the bankruptcy, creditors proceeded to

27   take steps in continued violation of the stay, or whether they moved

28   expeditiously to gain relief; (11) whether annulment of the stay will cause

1   irreparable injury to the debtor; and (12) whether stay relief will promote judicial

2   economy or other efficiencies.  *Fjeldsted*, 293 B.R. at 25.  These factors,

3   however, "are merely a framework for analysis and not a scorecard," and "[i]n

4   any given case, one factor may so outweigh the others as to be dispositive."  *Id.*

5   The bankruptcy court does not abuse its discretion when it considers all 12 of

6   the *Fjeldsted* factors in deciding whether to annul the automatic stay.  *See id.*; *In*

7   *re Estavan Capital LLC*, B.A.P. No. 15-1084, 2015 WL 7758494, at *6 (B.A.P.

8   9th Cir. Dec. 1, 2015).  *Cf. Gasprom, Inc. v. Fateh (In re Gasprom, Inc.)*, 500 B.R.

9   598, 607–08 (B.A.P. 9th Cir. 2013) (vacating order annulling the stay where the

10   bankruptcy court only considered a single *Fjeldsted* factor).

11       In the present case, the bankruptcy court correctly identified the 12

12   *Fjeldsted* factors, and it recognized that the factors are a framework for what is, at

13   its core, an equitable analysis.[52]  And, after discussing each of the 12 *Fjeldsted*

14   factors in varying detail, the bankruptcy court concluded that, on balance, the

15   factors weighed in favor of annulment.[53]

16       On appeal, Airlux contests the bankruptcy court's findings with respect to

17   certain of the individual factors and the overall balance of the equities.  Airlux

18   broadly argues that the bankruptcy court "abused its discretion by blatantly

19   ignoring the impact of the most significant and uncontroverted factor . . . which

20   was [SIF-II's] knowledge of [Airlux's] bankruptcy at the time it violated the

21   automatic stay; its continuous violation of the stay; and its inexplicable delay in

22   seeking relief from stay."[54]  According to Airlux, SIF-II's actions in violation of

23   the stay "are disproportionally greater than any action taken by [Airlux] during

24   the bankruptcy case, and should have been recognized as dispositive" of

25

26   _____

27   [52]   *See* Ruling 3:8–12 & 15:18–16:22.
   [53]   *See id.* at 30:3–41:7.

28   [54]   Appellant's Brief 16:7–11.

1    SIF-II's request for annulment.[55]  Airlux then proceeds to examine each of the

2    12 *Fjeldsted* factors to show why the bankruptcy court should have decided in

3    Airlux's favor.[56]  But Airlux's arguments, either with respect to the factors

4    individually or together, fail to persuade this Court that the bankruptcy court

5    abused its discretion.

6            Airlux's argument on appeal is simple:  Airlux disagrees with **how** the

7    bankruptcy court applied the *Fjeldsted* factors.  Although Airlux acknowledges

8    that the bankruptcy court considered SIF-II's violation of the stay and found

9    that the corresponding factors weighed against annulment,[57] according to Airlux,

10   the bankruptcy court failed to give enough weight to those findings when it

11   balanced the equities.  Airlux, thus, would have this Court substitute its

12   judgment for that of the bankruptcy court, which properly identified and applied

13   each of the 12 *Fjeldsted* factors and balanced the equities based upon the

14   evidence before it.  Airlux, however, does not identify any evidence or

15   arguments that the bankruptcy court failed to consider; Airlux simply asserts

16   that the bankruptcy court reached the wrong conclusion based upon the

17   evidence.  Such arguments are not sufficient to show that the bankruptcy court

18   abused its discretion in granting annulment of the stay.  *See Fjeldsted*, 293 B.R. at

19   25; *Estavan*, 2015 WL 7758494, at *6.

20           Ultimately, the bankruptcy court's decision to grant annulment of the

21   stay is firmly supported by the record.

22

23

24

25

26

---

[55]      *Id.* at 16:11–14.

27   [56]      *See id.* at 16:15–19:21.

28   [57]      *See generally* Appellant's Brief 16:5–19:21.

-16-

## VI.  CONCLUSION

Based upon the foregoing, the Court **AFFIRMS** the Order of the bankruptcy court granting retroactive relief from the automatic stay.

**IT IS SO ORDERED.**

Dated: March 9, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE

-17-